UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FREDRICK CHARLES HINTERBERGER,

                                                 **DECISION AND ORDER**

                          Plaintiff,                          1:19-CV-00553(JJM)

v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

            This is an action brought pursuant to 42 U.S.C. §405(g) to review the Commissioner of Social Security's final determination that plaintiff was not entitled to Disability Insurance Benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [6, 9].[1] The parties have consented to my jurisdiction [11]. Having reviewed the parties' submissions [6, 9, 10], the action is remanded for further proceedings.

**BACKGROUND**

            In December 2015, plaintiff, who was 46 years old, filed an application for DIB, alleging a disability onset date of August 10, 2015, due to "caged from C2-C7 in neck", myelopathy, "leg problems", high blood pressure, and diabetes". Administrative record [4], pp. 153, 171. Plaintiff's onset date coincides with his undergoing a laminectomy and fusion of his cervical spine at C3-C7. Id., pp. 223-35. Prior to that, plaintiff had worked as a truck driver. Id.,

---

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

p. 48.  In January 2016, plaintiff was seen by Marjory Craver, MSN, NP-C at the Veteran's Administration.[2]  At that time, he reported posterior neck pain, but had not seen his neurosurgeon since August 2015, because he had not paid his bill.  Id., p. 286. He removed his cervical collar himself and was not taking pain medication because of fear of addiction. Id. Plaintiff requested a release to return to work as a truck driver, but Nurse Craver directed him to see his neurosurgeon. Id., p. 291.  As the Commissioner notes, in the months thereafter, plaintiff had minimal complaints and it was noted that he was able to walk normally, and had normal muscle strength, range of motion, and neurological function in arms and legs. Id., pp. 475, 480, 674, 676, 679, 685-86, 688, 690, 694, 704, 709, 712, 714, 721.

   Approximately a year after his surgery, plaintiff was seen by an occupational therapist. Plaintiff reported that he was having difficulty lifting overhead and while his lower extremity numbness had resolved since the surgery, he was experiencing spasticity in his lower extremities over the past few months.  Id., p. 664. He was assessed as being able to independently perform the functions of daily living. Id.

   In October 2016, plaintiff reported that although his pre-surgery symptoms had resolved immediately after the surgery, he now had "intermittent pain in his posterior neck - stabbing and lasting seconds, along with intermittent spasms in lower legs". Id., p. 643. However, he denied loss of sensation or muscle weakness, and acknowledged that he was not taking his medications. Id., pp. 643-44.

   In July 2017, Naghmeh Rajaee, M.D., noted that an August 2016 MRI of plaintiff's neck was "basically stable", his range of motion was "acceptable for his fusion level",

---

[2] Since the parties' familiarity with the record is presumed, my recitation of the medical evidence is not comprehensive.

and his gait was normal. Id., p. 518.   A Hoffman's sign was positive bilaterally. Id.[3] Plaintiff reported a couple of instances of knee buckling while walking within the previous three months. Id., p. 519. Dr. Rajaee found that plaintiff had mild spasticity, and suggested that he use a cane in the winter. Id.

After plaintiff's claims were initially denied, an administrative hearing was held on March 29, 2018 before Administrative Law Judge ("ALJ") John Loughlin, at which plaintiff, who was represented by counsel, and a vocational expert testified.  Id., pp. 38-75.

There were two medical opinions of plaintiff's functional limitations in the record.  On February 24, 2016, Donna Miller, D.O., completed a consultative internal medical examination assessing plaintiff with a "moderate limitation with heavy lifting, bending, carrying, pushing, and pulling".  Id., p. 382.

On February 28, 2018,  Nurse Craver completed a Lumbar and Cervical Spine Residual Functional Capacity ("RFC") questionnaire, which assessed him with the ability to walk five city blocks without rest or severe pain, stand and sit for more than two hours at one time, and frequently twist, bend and squat. Id., pp. 783, 785.  However, Nurse Craver did not complete other sections of the questionnaire, including those assessing plaintiff's capacity to lift and carry, move his neck, and reach with his arms. Id., pp. 784-85. Instead, she referred those inquiries to plaintiff's neurosurgeon:  "has pending additional eval with another neurosurgeon to see if any additional surgery is needed. Please check with his neurosurgeon for specifics". Id., p. 785 (emphasis in original).  Nurse Craver noted that plaintiff remained noncompliant with his medications, that his prognosis was good, and that he experiences "sharp shooting pain" that "lasts seconds" when the weather changes or when he coughs. Id., p. 781.

---

[3] "[A] positive Hoffman's sign may be indicative of spinal cord compression." Scott v. Berryhill, 2018 WL 4488497, *4 (E.D. Cal. 2018).

In his June 22, 2018 decision, ALJ Loughlin determined that plaintiff's severe impairments were "cervical degenerative disc disease and stenosis; status post-cervical laminectomy and fusion; and diabetes" (id., p. 23), and assessed him with the residual functional capacity ("RFC") to perform light work, [4] except that, *inter alia*, he can frequently "push or pull and reach overhead with both upper extremities", kneel, crouch, stoop, crawl, and climb stairs and ramps. Id., p. 25.

In formulating that RFC, ALJ Loughlin gave "some weight" to Dr. Miller's opinion "because it lacks specificity. For example, Dr. Miller failed to specifically identify how many pounds and how often the claimant could lift". Id., p. 27. Likewise, he gave "some weight" to Nurse Craver's opinion. Whereas ALJ Loughlin noted that plaintiff's testimony that she "could walk four to five blocks and . . . climb five flights of stairs before stopping" was "generally consistent" with Nurse Craver's opinion, he found that her opinion "lacks certainty", explaining that "[f]or example, there are several instances where [she] declines to render and opinion and defers to the claimant's neurosurgeon". Id.

Based on the RFC and the vocational expert's testimony, ALJ Loughlin determined that although plaintiff could not perform his past relevant work, there were sufficient jobs in the national economy that he was able to perform, and that he therefore was not disabled from his alleged onset date of August 10, 2015. Id., pp. 27-29. ALJ Loughlin's decision became the final decision of the Commissioner when, after considering additional medical records, the Appeals Council denied plaintiff's request for review. Id., pp. 1-5. This action ensued.

---

[4]     "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §404.1567(b).

## DISCUSSION

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Acting Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

In seeking remand, plaintiff argues that ALJ Loughlin's RFC finding "is not supported by substantial evidence because he relied on opinion evidence he conceded was vague, he did not explain how the RFC was supported by those opinions, and he failed to clarify the record with more detailed functional opinion evidence". Plaintiff's Memorandum of Law [6-1], p. 1. In response, the Commissioner argues that ALJ Loughlin's RFC was supported by substantial evidence, given that "with the exception of intermittent, extremely brief episodes of neck pain when he coughed, sneezed, or turned his head 'too quickly' . . . [p]laintiff's spinal fusion significantly stabilized and improved his neck pain and motor function, allowing him to drive, help a friend move, and perform all activities of daily living". Commissioner's Brief [9-1], p. 23. The Commissioner further contends that ALJ Loughlin was "'not required to rely

entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians'". Id. (*quoting* Martise v. Astrue, 641 F.3d 909 (8th Cir. 2011)).

**B.     Did ALJ Loughlin Properly Assess Plaintiff's RFC?**

The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (Summary Order).  An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". Id.

Although the Commissioner argues that "[t]he ALJ may formulate an RFC without a medical source statement or formal medical opinion" (Commissioner's Brief [9-1], p. 24), in the absence of a competent medical opinion, an ALJ is generally "not qualified to assess a claimant's RFC on the basis of bare medical findings . . . . Thus, even though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself". Perkins v. Berryhill, 2018 WL 3372964, *3 (W.D.N.Y. 2018).

"As a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Nelson v. Commissioner of Social Security, 351 F. Supp. 3d 361, 366 (W.D.N.Y. 2018). *See* Goble v. Colvin,  2016 WL 3179901, *6 (W.D.N.Y. 2016) ("the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence"); Wilson v. Colvin, 2015 WL 1003933, *21 (W.D.N.Y. 2015); Guttierez v. Berryhill, 2018 WL 3802015, *3 (W.D.N.Y. 2018). *But see* Dougherty-Noteboom v. Berryhill, 2018 WL 3866671, *10 (W.D.N.Y. 2018) ("the regulations contemplate that the ALJ may form the RFC,

at least in part, by making determinations about the 'bare medical findings' independent of an expert medical opinion").

An exception arises "when the medical evidence shows only minor physical impairments". Perkins, 2018 WL 3372694, *3. In those circumstances, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment" (id.), but "must provide a function-by-function analysis of the claimant's work-related capacity". Judd v. Berryhill, 2018 WL 6321391, *8 (W.D.N.Y. 2018).  However, that did not occur here.

Another exception exists where the treatment notes contain a useful assessment of plaintiff's functional capacities.  *See* Monroe v. Colvin, 676 Fed. App'x 5, 6-7 (2d Cir. 2017). *See also* Muhammad v. Colvin, 2017 WL 4837583, *4 (W.D.N.Y. 2017) ("[w]hile in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations from a medical source"). In those circumstances, an ALJ can formulate the RFC without a medical source opinion.  However, the Commissioner fails to point to, nor does it appear that there were any treatment notes reflecting plaintiff's functional limitations that could permit ALJ Loughlin, as a layperson, to formulate the RFC.  Even if, as the Commissioner argues,  ALJ Loughlin "considered Dr. Rajaee's opinions that Plaintiff's range of motion in his neck was 'acceptable for his fusion level'" (Commissioner's Brief [9-1], p. 26), it is not evident how that assessment translates to an actual functional limitation.

Although "the RFC does not need to correspond exactly to an opinion, it does require that an opinion be given enough weight to rely on it for the determination of the RFC." Waldock v. Saul, 2020 WL 1080412, *3 (W.D.N.Y. 2020). *See also* Marshall v. Berryhill, 2018

WL 6257430, *2 (W.D.N.Y. 2018) ("[b]y failing to give controlling, or even substantial, weight to any of the treating physicians, the A.L.J.'s RFC determination is not based on a medical opinion. An RFC determination made without the benefit of a medical opinion is insufficient to support the finding with substantial evidence").  By affording no more than "some" weight to the opinions of Dr. Miller and Nurse Craver because of their perceived lack of specificity, that did not occur here.

ALJ Loughlin was entitled to conclude, as he did, that the medical opinions in the record lacked sufficient specificity to afford them substantial or controlling weight - either partially or in their entirety.  See Potts v. Commissioner of Social Security, 2018 WL 5886909, *4 (W.D.N.Y. 2018) ("[t]he ALJ . . . discounted Dr. Siddiqui's opinion because she found it 'quite vague,' which she was authorized to do under the regulations"). See also Roe v. Colvin, 2015 WL 729684, *4 (N.D.N.Y. 2015) ("a physician's opinion which is so vague as to prevent the ALJ to bridge the gap between a claimant's impairments and the functional limitations that flow from those impairments is useless").  However, since these were the only medical opinions assessing plaintiff's functional limitations, he should have recontacted the sources, or otherwise sought additional medical opinion evidence regarding plaintiff's functional limitations before formulating the RFC. See Anderson v. Colvin, 2013 WL 5939665, *9 (N.D.N.Y. 2013) ("use of imprecise and nebulous terms regarding functional limitations raises a red flag. In such circumstances, administrative law judges following best practices might well be advised to recontact such examiners routinely for clarification"); 20 C.F.R. §404.1519p(b) ("[i]f the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report").  Without doing so, it is difficult to

discern how ALJ Loughlin, as a layperson, properly formulated the RFC from the record, which lacked any other useful assessments of plaintiff's functional limitations.  Tellingly, even Nurse Craver, who regularly treated plaintiff and was a medical provider, believed that she was not equipped to render an opinion concerning plaintiff's capacity to lift, move his neck, reach overhead, or work on a sustained basis. [4], p. 785.

"The ALJ is required to provide rationale in the written decision sufficient to allow this Court to conduct an adequate review of her findings." Durodoye v. Commissioner of Social Security, 2018 WL 1444212, *7 (N.D.N.Y. 2018).   By only vaguely indicating that he was affording "some" weight to the medical opinions, it is unclear how ALJ Loughlin arrived at the RFC.  Nor is it evident that plaintiff is capable of performing those functions. For example, as plaintiff notes, Dr. Miller assessed plaintiff with a moderate limitation in pushing and pulling ([4], p. 382); yet, without explanation, ALJ Loughlin found that plaintiff could *frequently* push and pull.[5] Likewise, although Dr. Miller's examination revealed that plaintiff had a limited range of motion in his cervical spine (id., p. 381) and Nurse Craver similarly noted that plaintiff had limited extension of his neck and referred to plaintiff's neurosurgeon for an opinion as to plaintiff's capacity to move his neck in various positions on a sustained basis (id., pp. 781, 784), the RFC contains no such limitation, or explanation as to why none was included.  This is especially important because the vocational expert testified that the jobs he found plaintiff capable of performing require "more than occasional flexion". Id., p. 74.   Under these circumstances, I conclude that ALJ Loughlin's RFC is not supported by substantial evidence.

---

[5]     The Commissioner mischaracterizes Dr. Miller's opinion as finding that plaintiff "only had limitations in 'heavy' exertional activities".  Commissioner's Brief [9-1], p. 26.  While Dr. Miller did find that plaintiff had a moderate limitation for "heavy lifting", she did not apply that enhancement to the other activities (*e.g.*, bending, carrying, pushing and pulling) she assessed plaintiff with a moderate limitation in performing.  [4], p. 382.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [6] is granted to the extent that this case is remanded to the Commissioner for further proceedings consistent with this Decision and Order, but is otherwise denied, and the Commissioner's motion [9] is denied.

**SO ORDERED**.

Dated: August 3, 2020

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
